# IN THE COURT OF
# COMMON PLEAS FOR THE STATE OF
# DELAWARE IN AND FOR NEW CASTLE COUNTY

AUTO EQUITY LOANS )
OF DELAWARE, LLC, and )
DAVID LEVI, )
                 )
    Petitioners/Counter-Respondents, )
    & Respondents-below, )
                 )
            v. )     **C.A. No. CPU4-17-003398**
                 )
JOSEPH BAIRD, )
ALTON GRIFFIN, and )
JEANNINE MEDORA, )
                 )
    Respondents/Counter-Petitioners, )
    & Claimants-below. )
                 )

Submitted: March 15, 2018
Decided: May 2, 2018

## MEMORANDUM OPINION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Douglas D. Herrmann, Esq.
Christopher B. Chuff, Esq.
Pepper Hamilton LLP
Hercules Plaza, Ste. 5100
1313 Market Street, PO Box 1709
Wilmington, DE 19899-1709
*Attorneys for Petitioners*

OF COUNSEL
Alexander L. Harris, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Vivian A. Houghton, Esq.
Law Office of Vivian A.
Houghton, Inc.
800 N. West Street, 1st Fl.
Wilmington, DE 19801
*Attorneys for Respondents*

OF COUNSEL
Robert F. Salvin, Esq.
Two Bala Plaza, Ste. 300
Bala Cynwyd, PA 19004

**SMALLS, C.J.**

This case was originally filed in the Delaware Court of Chancery and arises out of three consumer credit contracts. On August 15, 2017, the Chancery Court transferred the case to the Court of Common Pleas pursuant to 10 *Del. C.* § 5702.[1] Presently before the Court are Cross-Motions for Summary Judgment. On December 15, 2017, Petitioners filed their *Opening Brief in Support of Vacating Arbitration Awards.*[2] On December 22, 2017, a joint stipulation regarding supplemental briefing was filed. On January 15, 2018, Respondents filed their *Response in Opposition to Summary Judgment and Cross-Motion for Summary Judgment.*[3] On February 15, 2018, Petitioners filed their *Reply Brief in Further Support of Vacating Arbitration Awards.*[4] And, on March 15, 2018, pursuant to the scheduling order, Respondents notified the Court that they would not be filing a reply brief.

Petitioners request that this Court vacate the arbitration awards. Respondents request that this Court confirm the arbitrator's awards, enter judgment, and reassess attorneys' fees and costs in light of the current actions. The Court's determination of the dispute is limited

---

[1] Section 5702(d) grants this Court jurisdiction over "all actions arising from an arbitration agreement in or relating to a contract to provide consumer credit." 10 *Del. C.* § 5702(d); *see also FIA Card Servs. v. Ali*, 2008 WL 4830717, at *1 (Del. Com. Pl. Oct. 31, 2008); *contra SC & A Construction, Inc. v. Potter*, 2017 WL 2378020, at *6 (Del. Super. May 31, 2017) ("Only the Court of Chancery has jurisdiction to vacate or confirm an arbitrator's award."); *see also* 10 *Del. C.* § 1902.
Consumer credit is defined as "[c]redit extended to an individual to facilitate the purchase of consumer goods and services." BLACK'S LAW DICTIONARY at 396 (8th ed. 2004).
[2] Petitioners' Opening Brief in Support of Vacating Arbitration Awards (hereinafter "Petitioners' Opening Brief"). This Court granted a consolidation request on November 8, 2017.
[3] Respondents' Response in Opposition to Summary Judgment and Cross Motion for Summary Judgment (hereinafter "Respondents' Response").
[4] Petitioners' Reply Brief in Further Support of Vacating Arbitration Awards (hereinafter "Petitioners' Reply").

to whether the Arbitration Awards should be confirmed or vacated.[5] This is the Court's Memorandum Opinion after consideration of the pleadings and supplemental briefing.

## I. FACTS & PROCEDURE

Petitioner Auto Equity Loans of Delaware, LLC ("AEL") and Petitioner David Levi ("Levi") (collectively "Petitioners") entered into a "series" of nearly identical loan agreements with Respondent Joseph Baird ("Respondent Baird")—the final being the Secondary Motor Vehicle Finance Contract Loan and Security Agreement. Petitioners entered into a Secondary Motor Vehicle Finance Contract Loan and Security Agreement with Respondent Alton Griffin ("Respondent Griffin"). Petitioners also entered into a Secondary Motor Vehicle Finance Contract Loan and Security Agreement with Respondent Jeannine Medora ("Respondent Medora") (collectively "Respondents"). Both loan agreements were signed at an AEL office in Delaware. The parties agreed that the loan agreements "shall be governed by the laws of the State of Delaware."[6] The signatories also agreed to resolve certain disputes by arbitration and that the "arbitration shall take place in the State of Delaware."[7]

After the loan agreements were executed, and prior to leaving AEL's Delaware office, Respondents received their respective loan amounts under the agreements. At some point during the repayment period (without any apparent triggering dispute), Respondents filed

---

[5] *See* 10 *Del. C.* § 5701 ("In determining any matter arising under this chapter, the Court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.").

[6] Petition to Vacate Arbitration Award for Respondent Baird, Exhibit 1; Petition to Vacate Arbitration Award for Respondent Griffin, Exhibit 1; Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 1.

[7] Petition to Vacate Arbitration Award for Respondent Baird, Exhibit 1; Petition to Vacate Arbitration Award for Respondent Griffin, Exhibit 1; Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 1.

3

separate Demands for Arbitration with the American Arbitration Association ("AAA"), requesting that Pennsylvania law apply to the loan agreements instead of the contractual provisions applying Delaware law. On January 24, 2017, the AAA appointed arbitrator held an evidentiary hearing for Respondent Medora. And on March 19, 2017, the arbitrator issued an award in favor of Respondent Medora. On February 2, 2017, the AAA appointed arbitrator held an evidentiary hearing for Respondent Griffin. And on March 23, 2017, the arbitrator issued an award in favor of Respondent Griffin. On March 8, 2017, the same AAA appointed arbitrator held an evidentiary hearing for Respondent Baird. And on March 21, 2017, the arbitrator issued an award in favor of Respondent Baird.

## A. RESPONDENT MEDORA

On March 19, 2017, the arbitrator made findings of fact and law in the arbitration award for Respondent Medora.[8] The arbitrator found that Respondent Medora, a Pennsylvania resident, viewed an internet advertisement while in Pennsylvania for title loans by AEL.[9] AEL has offices in Delaware and is licensed and regulated by the Delaware State Bank Commissioner.[10] Respondent Medora traveled from Philadelphia, Pennsylvania to AEL's office in Wilmington, completed a loan application in which she pledged her Pennsylvania titled vehicle as collateral and signed a loan agreement for $390.00.[11] She made no payments on the loan.[12] The arbitrator preliminarily noted that Respondent had withdrawn

---

[8] Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 3.
[9] *See id.*, Exhibit 3, ¶ 7.
[10] *See id.*, Exhibit 3, ¶¶ 8-9. AEL does not have offices in Pennsylvania and is not licensed by the Pennsylvania Department of Banking. *See id.*
[11] *See id.*, Exhibit 3, ¶ 10.
[12] *See id.*, Exhibit 3, ¶ 14.

4

Counts I (Unconscionability), III (Pennsylvania Unfair Trade Practices and Consumer Protection Law), and V (Racketeer Influenced and Corrupt Organizations Act); thus, only Count II (Pennsylvania Loan Interest and Protection Law) and Count IV (Truth in Lending) were at issue.[13]

Regarding Count II, the arbitrator analyzed the cases "cited in the parties' legal memoranda and oral arguments."[14] The arbitrator focused particularly on *Kaneff v. Delaware Title Loans, Inc.*,[15] *Georgia v. Total Asset Recovery, Inc.*,[16] *Jaibur v. Auto Equity Loans of Delaware, LLC & David Levi*, and *Salvatico v. Carbucks of Delaware, Inc.* Applying all four cases, the arbitrator found that Pennsylvania substantive law applied to the parties' loan transaction.[17] Accordingly, the arbitrator stated:

> Pursuant to the Federal Truth-in-Lending Act ("TILA") said loan agreement accurately disclosed a Finance Charge of $367.40 and an Annual Percentage Rate ("APR") of 243.35%, a finance charge and interest rate permitted by Delaware law but prohibited by Pennsylvania law. . . . Such a high interest rate loan is prohibited by Pennsylvania public policy and the Pennsylvania Loan Interest and Protection Law ("Act 6").[18]

In applying Pennsylvania law, the arbitrator found that Petitioners were liable pursuant to the Pennsylvania Loan Interest and Protection Law ("PLIPL") as well as the Truth-in-Lending Act ("TILA").[19] Respondent Medora was awarded TILA statutory damages of $734.80, which equaled twice the unlawful finance charge of $367.40.[20] However, pursuant to PLIPL,

---

[13] *See id.*, Exhibit 3, ¶ 1; Respondents' Response, Exhibit L.
[14] Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 3, ¶ 16.
[15] *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616 (3d Cir. 2009).
[16] *Gregoria v. Total Asset Recovery, Inc.*, 2015 WL 115501 (E.D. Pa. Jan. 8, 2015).
[17] *See id.*, Exhibit 3, ¶¶ 16-18.
[18] *See id.*, Exhibit 3, ¶¶ 12-13.
[19] *See id.*, Exhibit 3, ¶¶ 19, 21.
[20] *See id.*, Exhibit 3, ¶ 23.

5

Respondent Medora was required to pay Petitioners $407.87 in loan principal and lawful interest.[21] The arbitrator also awarded $4,400.00 for Respondent Medora's attorney fees pursuant to TILA and PLIPL.[22]

## B. RESPONDENT BAIRD

On March 21, 2017, the arbitrator made findings of fact and law in the arbitration award for Respondent Baird.[23] The arbitrator found that Respondent Baird, a Pennsylvania resident, viewed an internet advertisement while in Pennsylvania for title loans by AEL.[24] AEL has offices in Delaware and is licensed and regulated by the Delaware State Bank Commissioner.[25] From May 2014 through August 2016, Respondent Baird traveled from Philadelphia, Pennsylvania to AEL's office in Wilmington nine times, completing various loan applications in which he pledged his Pennsylvania titled vehicle as collateral and signed nine loan agreements totaling $2,025.00.[26] "Each subsequent agreement incorporated the balance due on the previous loan and in some instances extended new credit" to Respondent Baird.[27] He made payments totaling $4,628.00 toward his balance.[28] Respondent Baird did not default on his loan.[29]

---

[21] *See id.* American Arbitration Association administrative fees were also part of the damage award.
[22] *See id.*, Exhibit 3, ¶ 25.
[23] Petition to Vacate Arbitration Award for Respondent Baird, Exhibit 3.
[24] *See id.*, Exhibit 3, ¶ 8.
[25] *See id.*, Exhibit 3, ¶¶ 10-11. AEL does not have offices in Pennsylvania and is not licensed by the Pennsylvania Department of Banking. *See id.*
[26] *See id.*, Exhibit 3, ¶ 12.
[27] *Id.*
[28] *See id.*, Exhibit 3, ¶ 16.
[29] *See id.*

In addressing Count I (Unconscionability), the arbitrator found in favor of Petitioners and against Respondent Baird regarding his claim of unconscionability.[30] And after addressing Respondent Baird's arguments against loan accounting procedure under the UCC,[31] the arbitrator addressed Count II (applicability of Pennsylvania Loan Interest and Protection Law), Count III (Pennsylvania Unfair Trade Practices and Consumer Protection Law), Count IV (Truth-in-Lending Act), and Count VI (Racketeer Influenced and Corrupt Organizations Act).

Regarding Count II, the arbitrator analyzed the cases "cited in the parties' legal memoranda and oral arguments."[32] The arbitrator focused particularly on *Kaneff v. Delaware Title Loans, Inc.*, *Georgia v. Total Asset Recovery, Inc.*, *Jaibur v. Auto Equity Loans of Delaware, LLC & David Levi*, and *Salvatico v. Carbucks of Delaware, Inc.* Applying all four cases, the arbitrator found that Pennsylvania substantive law applied to the parties' loan transaction.[33] Accordingly, the arbitrator stated:

> Pursuant to the Federal Truth-in-Lending Act ("TILA") said loan agreements accurately disclosed the various Finance Charges and an Annual Percentage Rate[] ("APR") of approximately 180.00%, finance charges and interest rates permitted by Delaware law but prohibited by Pennsylvania law. The Finance Charge on the final current loan is $794.00. [] Such a high interest rate loan is prohibited by Pennsylvania public policy and the Pennsylvania Loan Interest and Protection Law ("Act 6").[34]

---

[30] *See id.*, Exhibit 3, ¶ 3 ("[w]ith regard to the Count I Unconscionability Claim I find against Claimant [Baird] and for Respondents. . . .)."
[31] The arbitrator found in favor of Respondent regarding his claim that Petitioners did not provide him with a timely loan accounting under the Uniform Commercial Code ("UCC"). *See id.*, Exhibit 3, ¶¶ 19-20.
[32] *See id.*, Exhibit 3, ¶ 21.
[33] *See id.*, Exhibit 3, ¶ 23.
[34] *See id.*, Exhibit 3, ¶¶ 14-15.

7

In applying Pennsylvania law, he found that Petitioners had violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which "prohibits making certain misrepresentations that are fraudulent or deceptive."[35] Because the arbitrator found that Pennsylvania law applied, he also found Petitioners liable under the Truth-in-Lending Act ("TILA") for "misstating the correct rate chargeable," and under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for the "collection of unlawful debt through an enterprise."[36] The arbitrator awarded Respondent $7,269.00 for PLIPL statutory damages, $500.00 for UCC statutory damages, $1,588.00 for TILA statutory damages, and $6,600.00 in attorney fees.[37] Respondent Baird was required to pay Petitioners $604.00 in loan principal and lawful interest.[38]

## C. RESPONDENT GRIFFIN

On March 23, 2017, the arbitrator made findings of fact and law in the arbitration award for Respondent Griffin.[39] The arbitrator found that Respondent Griffin, a Pennsylvania resident, viewed an internet advertisement while in Pennsylvania for title loans by AEL.[40] AEL has offices in Delaware and is licensed and regulated by the Delaware State Bank Commissioner.[41] Respondent Griffin traveled from Norristown, Pennsylvania to AEL's office in Wilmington, completed a loan application in which he pledged his Pennsylvania titled

---

[35] *See id.*, Exhibit 3, ¶ 28.

[36] *See id.*, Exhibit 3, ¶¶ 26, 32.

[37] *See id.*, Exhibit 3, ¶¶ 36, 38. American Arbitration Association administrative fees were also part of the damage award.

[38] *See id.*, Exhibit 3, ¶ 36.

[39] Petition to Vacate Arbitration Award for Respondent Griffin, Exhibit 3.

[40] *See id.*, Exhibit 3, ¶ 8.

[41] *See id.*, Exhibit 3, ¶ 10. AEL does not have offices in Pennsylvania and is not licensed by the Pennsylvania Department of Banking. *See id.*, Exhibit 3, ¶¶ 10-11.

vehicle as collateral and signed a loan agreement for $3,590.00.[42] He made only one payment of $437.73 towards the loan.[43] Because of Respondent Griffin's failure to pay, his vehicle was lawfully repossessed at his place of employment in Pennsylvania.[44]

After addressing Respondent Griffin's arguments against the vehicle sale procedure under the UCC,[45] the arbitrator addressed Count II (applicability of Pennsylvania Loan Interest and Protection Law), Count III (Pennsylvania Unfair Trade Practices and Consumer Protection Law), and Count VI (Racketeer Influenced and Corrupt Organizations Act).[46]

Regarding Count II, the arbitrator analyzed the cases "cited in the parties' legal memoranda and oral arguments."[47] The arbitrator again focused on *Kaneff v. Delaware Title Loans*, Inc., *Georgia v. Total Asset Recovery, Inc.*, *Jaibur v. Auto Equity Loans of Delaware, LLC & David Levi*, and *Salvatico v. Carbucks of Delaware, Inc.* The arbitrator found that Pennsylvania substantive law applied to the parties' loan transaction.[48] The arbitrator stated:

> Pursuant to the Federal Truth-in-Lending Act ("TILA") said loan agreement accurately disclosed a Finance Charge of $4289.14 and an Annual Percentage Rate ("APR") of 121.67%, a finance charge and interest rate permitted by

---

[42] *See id.*, Exhibit 3, ¶ 12.

[43] *See id.*, Exhibit 3, ¶ 16.

[44] *See id.*, Exhibit 3, ¶ 17.

[45] The arbitrator found in favor of Petitioners regarding Respondent Griffin's claim of a breach of the peace under the Uniform Commercial Code ("UCC") and his claim that Petitioners did not provide him with a timely loan accounting pursuant to the sale of the vehicle at the Manheim Auto Auction. *See id.*, Exhibit 3, ¶¶ 19, 31. The arbitrator also found in Respondent Griffin's favor regarding his claim that he did not receive timely notice and his vehicle was not sold in a commercially reasonable manner under the UCC. *See id.*, Exhibit 3, ¶ 25. Because Petitioners have postponed any arguments against the arbitrator's Uniform Commercial Code ("UCC") determination pending this Court's ruling on the current Petition to vacate, this Court will not address these potential contentions. *See id.*, Exhibit 3, n.1.

[46] The arbitrator notes in the beginning of the award that Respondent Griffin withdrew Counts I (Unconscionability) and V (Fair Debt Collection Practice Act). *See id.*, Exhibit 3, ¶ 1; Respondents' Response, Exhibit I, at 8, 15.

[47] *See id.*, Exhibit 3, ¶ 32.

[48] *See id.*, Exhibit 3, ¶ 34.

Delaware law but prohibited by Pennsylvania law. [] Such a high interest rate loan is prohibited by Pennsylvania public policy and the Pennsylvania Loan Interest and Protection Law ("Act 6").[49]

Accordingly, he found that Petitioners had violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which "prohibits making certain misrepresentations that are fraudulent or deceptive."[50] The arbitrator also found Petitioners liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for the "collection of unlawful debt through an enterprise."[51] The arbitrator awarded Respondent $1,221.00 for PLIPL statutory damages, $4,648.00 for UCC statutory damages, $12,000.00 for UTPCPL statutory damages, and $8,000.00 in attorney fees.[52] Respondent Griffin was required to pay Petitioners $3,475.00 in loan principal and lawful interest.[53]

## II.  STANDARD OF REVIEW

This Court recently outlined the standard applicable to cross-motions for summary judgment:

> "When opposing parties make Cross Motions for Summary Judgment, neither party will be granted summary judgment unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law." *Court of Common Pleas Civil Rule* 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Diverging from the Superior Court's Civil Rule 56(h), Court of Common Pleas' Civil Rule 56 adheres to the original approach of addressing cross-motions for summary judgment. The original approach to

---

[49] *See id.*, Exhibit 3, ¶¶ 14-15.
[50] *See id.*, Exhibit 3, ¶ 37.
[51] *See id.*, Exhibit 3, ¶ 43.
[52] *See id.*, Exhibit 3, ¶¶ 45-46. American Arbitration Association administrative fees were also part of the damage award.
[53] *See id.*, Exhibit 3, ¶ 36.

cross-motions for summary judgment, as previously articulated by the Superior Court and currently followed by the Court of Common Pleas is as follows:

> [T]he Court notes that where the parties have filed cross-motions for summary judgment, as here, "the standard for summary judgment 'is not altered." "Moreover, the existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues." "Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party." "Thus, the mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion."[54]

## III.   LAW

Delaware's Uniform Arbitration Act ("UAA")[55] sets forth five exclusive allowances for the vacation of an arbitration award:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral except where the award was by confession, or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) *The arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made;*

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor, or refused to hear evidence material to the controversy, or

---

[54] *Lockhart v. Progressive Northern Ins. Co.*, 2018 WL 1399612, at *2 (Del. Com. Pl. Mar. 19, 2018) (footnotes omitted) (quoting *Gallaher v. USAA Cas. Ins. Co.*, 2005 WL 3062014, at *1 (Del. Super. Nov. 14, 2005); *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013)).

[55] Despite the arbitration provisions in the loan agreements applying the Federal Arbitration Act to disputes—Respondent Griffin's agreement applying Delaware's Uniform Arbitration Act ("UAA") secondarily—the parties have "clearly evidence[d] their intent to be bound by [state] rules." *Pers. Decisions, Inc. v. Bus. Planning Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008) (quoting *Sovak v. Chugai Pharm Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002)) (internal quotation marks omitted). The parties have "cited and relied" on the UAA and, thus, this Court will apply the UAA. *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 731 n.6 (Del. Ch. 2008).

11

otherwise so conducted the hearing, contrary to the provisions of § 5706 of this title, or failed to follow the procedures set forth in this chapter, so as to prejudice substantially the rights of a party, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection; or

(5) There was no valid arbitration agreement, or the agreement to arbitrate had not been complied with, or the arbitrated claim was barred by limitation and the party applying to vacate the award did not participate in the arbitration hearing without raising the objection. . . .[56]

Petitioners have asserted that the arbitrator "exceeded [his] powers" by applying Pennsylvania law to the arbitration proceeding and finding them liable for violations of the UTPCPL, TILA, and RICO.[57]

The applicable standard for vacating an award under both the Federal Arbitration Act and the UAA is "manifest disregard."[58] That is, "[a]rbitrators who act in 'manifest disregard of the law' are deemed to have exceeded their authority under Section 5714(a)(3) . . . [and] the Court may vacate the arbitration award."[59] The Delaware Supreme Court has defined this standard as applied under § 5714(a)(3):

> The manifest disregard standard requires a party seeking vacatur to prove that the arbitrator was "fully aware of the existence of a clearly defined governing legal principle but refused to apply it, in effect, ignoring it." To meet this standard, the evidence must establish "that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."

---

[56] 10 *Del. C.* § 5714(a) (emphasis added); *see also FIA Card Servs.*, 2008 WL 4830717, at *1.

[57] 10 *Del. C.* § 5714(a).

[58] *Compare SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) (applying "manifest disregard" standard under the Federal Arbitration Act after a comparison to the UAA), *with Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *7 (Del. Ch. Aug. 5, 2003) (applying "manifest disregard" standard under the UAA).

[59] *Blank Rome*, 2003 WL 21801179, at *7 (footnotes omitted).

An arbitrator's awareness of the contract language, however, does not prove that the arbitrator "knew of the relevant legal principle" or "appreciated that this principle controlled the outcome of the dispute." Knowledge of the operative legal principle and its proper application can be inferred only "if the court finds 'an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator.' " "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision."[60]

With respect to errors of fact or law, Delaware courts have stated:

> To successfully convince the Court to vacate the award of an arbitration panel, the movant must show "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." This Court has noted that an arbitration panel's decision may be vacated if the panel, "in manifest disregard of the law, [was] cognizant of the controlling law but clearly chose to ignore it in reaching [its] decision" This Court has also noted, however, that "[m]ere error of law or fact is ... not sufficient grounds to vacate an[] award," and that "[i]t is recognized that inaccuracies as to the law or facts are possible and their existence is accepted implicitly [in] an agreement to submit the dispute to arbitration." In sum, "the Court is not to pass an independent judgment on the evidence or applicable law," and "[i]f any grounds for the award can be inferred from the facts on the record, the Court must presume that the arbitrator did not exceed his authority and the award must be upheld."[61]

Delaware courts have warned that "'review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence.'"[62] The Court is to presume that the arbitrator acted "within the scope of [his] authority," and "resolve all doubts in favor of the arbitrator."[63]

---

[60] *SPX Corp.*, 94 A.3d at 750-51 (footnotes omitted).

[61] *TD Ameritrade, Inc.*, 953 A.2d at 732-33 (footnotes omitted) (quoting *Falcon Steel Co. v. HCB Contractors, Inc.*, 1991 WL 50139, at *2 (Del. Ch. Apr. 4, 1991); *Audio Jam, Inc. v. Fazelli*, 1997 WL 153814, at *1 (Del. Ch. Mar. 20, 1997)).

[62] *See, e.g., id.* at 732 (quoting *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004)).

[63] *See id.* (quoting *Brennan v. CIGNA Corp.*, 2008 WL 2441049, at *4 (3d Cir. June 18, 2008)) (internal quotation marks omitted).

13

## IV.  PARTIES' CONTENTIONS

### A. Petitioners' Arguments

Petitioners assert that the arbitration award should be vacated because the arbitrator manifestly disregarded the law when he: (1) ignored the plain terms of the loan agreements and/or failed to perform a choice of law analysis, (2) ignored controlling precedent that he previously relied upon when ruling in prior arbitrations and based his decision on claims withdrawn or abandoned by Respondents, (3) disregarded the commerce clause of the United States Constitution, and (4) applied the UTPCPL, RICO and TILA retroactively without analysis.[64]  Petitioners' arguments (1) and (2) are moored in the arbitrator's choice-of-law analysis.  Hence, the Court will mainly focus on this facet of the arbitration awards.

#### 1.  The Arbitrator Ignored the Choice of Law Provision In the Loan Agreements

Petitioners argue that manifest disregard occurred when the arbitrator failed to follow the terms of the contracts.[65]  Petitioners assert that the arbitrator cannot find each contract's

---

[64] Petitioners' Opening Brief at 9.  The Court will not address Petitioners' arguments regarding the dormant commerce clause doctrine and retroactivity.  The Court agrees with Respondents and finds Petitioners' arguments lack merit.  Petitioners have failed to provide a case, and the Court has failed to find such a case, where the commerce clause was applied to an arbitrator's choice-of-law decision.  In fact, the case Petitioners rely on, *Midwest Title Loans, Inc. v. Mills*, notes—in the context of a state statute requiring state licensing if a territorial component to the lending occurred—that the commerce clause does not prevent a choice-of-law analysis.  *See* 593 F.3d 660, 668 (7th Cir. 2010).  In fact, the Third Circuit has noted that a party's agreement to be bound by another state's laws is distinct from cases in which the State has violated the commerce clause.  *See Instructional Sys. v. Computer Curriculum Corp.*, 35 F.3d 813, 825-26 (3d Cir. 1994).  Since this issue was raised in arbitration and Petitioners have failed to present the Court with evidence that the arbitrator consciously disregarded controlling precedent, the Court finds in Respondents' favor regarding this constitutional argument. Respondents' Response, Exhibit O.  Likewise, as Petitioners fail to support how the application of relevant statutes (UTPCPL, RICO, and TILA) by the arbitrator in this case is akin to applying laws "retroactively," the Court finds Petitioners' retroactivity argument unpersuasive. Petitioners' Opening Brief at 31-32.  Petitioners have again failed to present evidence that the arbitrator manifestly disregarded the law.

[65] *See id.* at 12.

14

plain language to apply Delaware law and then, in the same award, apply Pennsylvania law to the transaction.[66] In fact, Petitioners argue that Respondents carried the burden of raising the issue of Pennsylvania law's applicability, citing to *Carlyle Investment Management L.L.C. v. Moonmouth Company.*[67] They argue that this application "defies both logic and law" because Petitioners presented the arbitrator with numerous precedents on the enforceability of a choice-of-law provision that applies Delaware law.[68] Likewise, in February 2011, the arbitrator applied Delaware law in a similar arbitration.[69]

Alternatively, Petitioners assert that even if the arbitrator had ignored the plain language and engaged in a choice-of-law analysis, he would have found Delaware law applicable.[70] Petitioners argue that Delaware would prevail as the appropriate forum because—when determining the appropriate choice—*Restatement (Second) of Conflict of Laws* § 188 focuses on the place of contract, place of negotiation, place of performance, location of the subject matter, and the domicile or place of incorporation of the parties.[71]

### 2. *The Arbitrator Relied On Improper Case Law*

Petitioners assert that the arbitrator relied on "four inapposite Pennsylvania cases" for his analyses.[72] Petitioners assert that *Kaneff, Gregoria, Jaibur* and *Salvatico* provide no guidance

---

[66] *See id.* at 13-14.
[67] *See id.* at 13 (citing *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co.*, 2015 WL 778846, at *6 (Del. Ch. Feb. 24, 2015)). This case is not particularly helpful as its admonishment is based on general conflict of law principles and the court ultimately found no true conflict because neither Guernsey nor Delaware had addressed whether third-party funding agreements and related documents deserve work product protection. *See Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co.*, 2015 WL 778846, at *6, 10 (Del. Ch. Feb. 24, 2015).
[68] *See id.* at 13-14.
[69] *See id.* at 14.
[70] *See id.* at 22.
[71] *See id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)
[72] *See id.* at 15.

15

for the current circumstances.[73]  Petitioners take issue with the arbitrator's reliance on *Kaneff* because they argue *Kaneff* did not address the substantive question at issue here, i.e. whether Delaware law applies to a loan agreement with a strong connection to Delaware.[74]  Petitioners read *Kaneff* as addressing only whether arbitration should be enforced or the case remain in federal court.[75]  Further, Petitioners read the case as only involving a plaintiff's claim of unconscionability.[76]

Petitioners distinguish *Gregoria* because it concerned a motion to dismiss, which carries a lenient review standard, and focused on repossession concerns.[77]  Petitioners also argue that the Court was at a disadvantage when it discussed unconscionability because it did not possess sufficient evidence on the record.[78]  Finally, Petitioners argue that the *Gregoria* court never made a final choice-of-law decision because the case was dismissed with prejudice, as the plaintiffs failed to join an appropriate party and arbitrate the claims.[79]

Regarding *Jaibur*, Petitioners argue that the Court's Order in that case concerned a ruling on preliminary objections, and provided no legal analysis for its decision.[80]  Petitioners similarly raise issue with the arbitrator's reliance on *Salvatico* since the case is not analogous and lacks any rationale to aid the arbitrator in making a decision.[81]  Further, the factual history

---

[73] *See id.*
[74] *See id.* at 16.
[75] *See id.* at 15.
[76] *See id.* at 16.
[77] *See id.*
[78] *See id.*
[79] *See id.* at 17.
[80] *See id.*
[81] *See id.* at 18.

before the *Salvatico* court concerned one connection with Delaware, and the claims brought focused on unconscionability.[82]

## B. Respondents' Arguments

Respondents focus on Pennsylvania's fundamental policy against usury contracts, and the narrow standard of review for arbitration awards. Specifically, Respondents assert that: (1) the arbitrator properly determined that the Delaware choice-of-law clauses in the contracts were not applicable, (2) the arbitrator did not exceed his authority, (3) whether the arbitrator performed a reasonable choice-of-law analysis is beyond the standard of review, (4) applying Pennsylvania law in this case does not violate the United States Constitution, and (5) the arbitrator did not retroactively impose a new rules of law.[83] Respondents also move for summary judgment.[84]

### 1. *The Arbitrator's Choice-of-law Analysis Was Proper*

Respondents argue that the arbitrator was well within his rights to disregard the contracts' choice-of-law provisions and follow *Kaneff*, *Gregoria*, and *Salvatico*.[85] Respondents assert that these cases determined that Pennsylvania would prevail in a choice-of-law analysis because it had the greater interest in the harmful effects of the transactions.[86] Mainly, that Pennsylvania has a fundamental policy against usury contracts and the Respondents are

---

[82] *See id.* at 18-19.

[83] Respondents' Response. For reasons discussed above and addressed below, the Court will not address Respondents' rebuttal to Petitioners' arguments regarding the commerce clause and Retroactivity.

[84] *See id.* at 28.

[85] *See id.* at 16-17.

[86] *See id.* at 17.

Pennsylvania consumers.[87]   Concurrently, Respondents argue that Delaware's interest is simply to "protect[] one of its license lenders."[88]   Respondents argue that, in the end, the arbitrator was presented with arguments from both sides regarding the appropriate choice-of-law conclusion and he sided with Respondents.[89]

### 2. *The Arbitrator Did Not Exceed His Authority*

Respondents disagree with Petitioners' assertion that the arbitrator's decisions were based in unconscionability.[90]   Further, Respondents argue that the appropriate standard for reviewing arbitration awards prevents the Petitioners from dissecting the case law.[91]   Nevertheless, Respondents engage in a similar analysis.   They argue that each case involved a substantive ruling that arrived at the heart of the issue in these cases.   According to Respondents, *Kaneff* found Pennsylvania law to apply to a loan agreement with a high interest rate, enforcing the arbitration clause as not unconscionable under Pennsylvania law.[92]   Respondents read *Gregoria* to apply Pennsylvania law to a loan agreement pursuant to *Kaneff*.[93]   Likewise, *Salvatico* and *Jaibur* applied Pennsylvania law over Delaware law when high interest loans and Pennsylvania borrowers were involved.[94]   Because of these similarities, Respondents assert that the arbitrator's decisions were rationally based.[95]

---

[87] *See id.* at 17-18.
[88] *See id.* at 18.
[89] *See id.* at 19.
[90] *See id.* at 19.
[91] *See id.*
[92] *See id.* at 20.
[93] *See id.*
[94] *See id.*
[95] *See id.* at 21.

*3. The Arbitrator's Choice-of-law Analysis Is Beyond the Standard of Review*

Respondents argue that the arbitrator's analysis is beyond the scope of review because it had a "rational basis."[96] Respondents note that the Pennsylvania contacts were sufficient for the arbitrator's choice-of-law analysis to balance in Pennsylvania's favor.[97] These contacts involved Pennsylvania borrowers, Pennsylvania collateral, and Pennsylvania repossession.[98] In Respondents' view, Delaware's connection was only the execution of the loans.[99]

## V.   DISCUSSION

The Petitioners' agitation with the arbitration awards stem from their belief that the arbitrator exceeded, or so imperfectly executed, his authority as arbitrator when he refused to follow the contracts' choice-of-law provisions. Contrarily, Respondents rely on 10 *Del. C.* § 5701 and the manifest disregard standard in tandem, arguing that the arbitrator possessed rational reasons for his decisions. Thus, he did not exceed, or imperfectly execute, his authority under 10 *Del. C.* § 5714. For the reasons discussed below, I find that the arbitrator exceeded his authority and manifestly disregarded the law in applying Pennsylvania law to the loan agreements of Respondent Medora and Respondent Griffin. Therefore, these two arbitration awards are vacated.

---

[96] *See id.* at 21.
[97] *See id.*
[98] *See id.*
[99] *See id.* Respondents disagree with Petitioners' assertion that *Kaneff* was limited to a procedural ruling only, as the arbitrator found otherwise. *See id.*

This Court will apply Delaware's choice of law rules as Petitioners commenced this action in a Delaware court based on the belief that Delaware law applies.[100] Delaware's choice of law analysis begins with the question whether the "parties made an *effective* choice of law through their contract."[101] To find the contractual provision effective, the Court applies the "most significant relationship" test which is found in the *Restatement (Second) of Conflict of Laws* § 187.[102] Section 187 states:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>> (b) application of the law of the chosen state would be contrary to a *fundamental policy of a state* which *has a materially greater interest* than the chosen state in the determination of the particular issue *and which, under the rule of § 188, would be the state of the applicable law* in the absence of an effective choice of law by the parties.[103]

---

[100] *See Pennsylvania Employee, Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010); *see also Johnson v. Warner Bros. Entm't, Inc.*, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017).

[101] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017) (emphasis added) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 186 (1971)), *reh'g denied* (Apr. 28, 2017). Phrased differently, Petitioners' assertion that the choice-of-law provision in the contract preempts a choice-of-law analysis is incorrect. Delaware law engages in a choice-of-law analysis regardless of whether Delaware is the chosen forum in the contract. *Id.*

[102] *See SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 341-42 (Del. 2013) (internal quotation marks omitted).

[103] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971) (emphasis added); *see also Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006) (interpreting § 187). The Restatement distinguishes the issue in the present case from a "particular issue [that] is one which the parties could have resolved by an explicit provision in their agreement" based on the friction between Pennsylvania and Delaware law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. d (1971) ("The rule of this Subsection applies only when two or more states have an interest in the determination of the particular issue.").

In determining which state has a materially greater interest under § 187, the Court refers to *Restatement (Second) of Conflict of Laws* § 188. Section 188 states in relevant part:

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place of contracting,
>> (b) the place of negotiation of the contract,
>> (c) the place of performance,
>> (d) the location of the subject matter of the contract, and
>> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203 [Usury]. [104]

*Restatement (Second) of Conflict of Laws* §§ 187(2)(b) & 188 are applicable to the present case because Respondents claim that Pennsylvania has a fundamental policy against predatory interest rates and a materially greater interest than Delaware in the matter.[105]

Regarding the latter question of which state has the "materially greater interest" in this action, the answer must be Delaware. The Respondents traveled to Delaware and visited AEL's office in Delaware, signed the contract and pledged their Pennsylvania titled vehicles as collateral while at that Delaware location, and received the loan while at that Delaware

---

[104] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

[105] Importantly, because the loan agreement at issue here does not involve $100,000 or more, this Court cannot "assume a negative answer to both of these exceptions [§ 187(2)(a)-(b)]." *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 854-55 (Del. Ch. 2016) ("Before Section 2708 was enacted, a Delaware court ordinarily would have analyzed a parties' contractual choice of law under the Restatement (Second) of Conflict of Laws. . . ."); *see also* 6 *Del. C.* § 2708 (This section shall not apply to any contract, agreement or other undertaking . . . [i]nvolving less than $100,000."). When the contract concerns $100,000 or more, Delaware courts will apply the less stringent standard of "'bears some material relationship to the transaction.'" *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1025, 1032 (Del. Ch. 2005) (quoting *Annan v. Wilmington Trust Co.*, 559 A.2d 1289, 1293 (Del.1989) (involving a $106 million deal); *see also Abry Partners V, L.P.*, 891 A.2d at 1046 (involving a $500 million contract).

location.[106] While Respondents focus on their Pennsylvania residency and that they contacted AEL regarding an online advertisement, the important contacts outlined in § 188—and implicated here—balance in Petitioners' favor.[107]

Turning to the "fundamental policy" prong of section 187, the Restatement states, "[t]o be 'fundamental,' a policy must . . . be a substantial one."[108] Importantly, the Restatement advises that a "fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."[109] Delaware courts have supported the Restatement's advisement, finding a state's policy against certain contractual agreements to be a "fundamental policy."[110] In this vein, Pennsylvania law deems usury contracts illegal under the Pennsylvania Loan Interest and Protection Law, 41 P.S. § 101 *et seq.* Section 201 states:

> (a) Except as provided in Article III of this act, the maximum lawful rate of interest for the loan or use of money in an amount of fifty thousand dollars ($50,000) or less in all cases where no express contract shall have been made for a less rate shall be six per cent per annum.[111]

---

[106] The Court agrees with Petitioners that the "subject matter" of the loan agreement is the proceeds and not the vehicles used as collateral. *See* Petition to Vacate Arbitration Award for Respondent Baird at 7 n.1; Petition to Vacate Arbitration Award for Respondent Griffin at 6 n.2. Respondents did not enter into the agreements to receive their own vehicles as collateral. Likewise, Petitioners sought repayment; the collateral was security.

[107] Respondent Baird argues that he often made payments towards his loan over the telephone from Pennsylvania. Respondent Baird's Answer at ¶ 31. Respondent Griffin argues that AEL repossessed his vehicle in Pennsylvania and stored it in Pennsylvania. Respondent Griffin's Answer at ¶ 31. The Court finds the former contact too attenuated and the latter contacts concerning only the collateral of the contract and not the subject matter.

[108] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. g (1971).

[109] *Id.*

[110] *See, e.g.*, *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *2-4 (Del. Ch. Jan. 28, 2015) (noting California's codified public policy against agreements not to compete was a fundamental policy).

[111] 41 *Pa. Cons. Stat. Ann.* § 201 (West 2008); *see also Clerk v. First Bank of Delaware*, 735 F. Supp. 2d 170, 173 (E.D. Pa. 2010).

Conversely, as Delaware does not have a law against usury contracts, Delaware's competing public policy is its reverence for "freedom of contract."[112]

Thus, the question remains whether Delaware's connection to the contract and its history as "strongly contractarian in its law" necessitates the application of Delaware law.[113] In *Ascension Insurance Holdings, LLC v. Underwood* [hereinafter *Ascension*], the Delaware Chancery Court was dealing with a similar balancing test.[114] As part of a subsequent agreement to an asset purchase agreement, Mr. Underwood, a California resident, agreed not to compete with Ascension Insurance Holdings, LLC, a Delaware limited liability company with a principal place of business in California, or its subsidiary, Ascension Insurance Services, Inc., for a period of two years after leaving the subsidiary.[115] The subsequent agreement, an employee investment agreement (the "EIA"), contained a covenant not to compete clause and a Delaware choice-of-law provision.[116] The EIA was negotiated in California and the location covered by the agreement not to compete—i.e. the subject matter—was nearly solely within California.[117] The Court stated: "California is the state with the strongest contacts to the contract, and there is no question that, absent the contractual agreement of the parties to import Delaware law, California law would apply here."[118]

---

[112] *Ascension Ins. Holdings, LLC*, 2015 WL 356002, at *4-5.
[113] *See id.* at *4.
[114] *See id.*
[115] *See id.* at *2.
[116] *See id.* at *1-2.
[117] *See id.* at *3.
[118] *See id.*

Other than a non-compete covenant negotiated *as part* of an asset purchase, California prohibits contractual provisions not to compete.[119] Relying on the *Restatement (Second) of Conflict of Laws* § 187, the court found this public policy to be *fundamental*.[120] The court then compared California's fundamental policy against non-compete covenants with Delaware's "strongly contractarian" nature.[121] Describing Delaware's "sanctity of contracts" policy, the court opined:

> This jurisdiction respects the right of parties to freely contract and to be able to rely on the enforceability of their agreements; where Delaware's law applies, with very limited exceptions, our courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits. Upholding freedom of contract is a fundamental policy of this State.[122]

Nevertheless, the court found that "California's specific interest is materially greater than Delaware's general interest in the sanctity of a contract that has no relationship to this state."[123] Noting that the contacts were "predominantly in California," the court further articulated its opinion of Delaware's "general interest,"

> Without minimizing [Delaware's] significant interest, it seems to me that, where it is clear that the policy of the default state is that the contract at issue is abhorrent and void, and where, as here, the formation and enforcement of the contract relate overwhelmingly to the default state, a general interest in freedom of contract is unlikely to be the equal of that public policy under the

---

[119] *See id.* at *2 (citing *Cal. Bus. & Prof. Code* § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.")). The Chancery Court found that the employment investment agreement (the "EIA") was not negotiated as part of the asset purchase, "which is the sole ground upon which California relaxes its public policy prohibition against covenants not to compete." *See id.* at *3; *see also Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *18 (Del. Ch. July 22, 2015) (finding California's public policy did not supersede Delaware's freedom of contract principles because the non-compete agreement was connected with an asset sale).

[120] *Ascension Ins. Holdings, LLC*, 2015 WL 356002, at *2, 4.

[121] *See id.* at *4.

[122] *See id.*

[123] *See id.* at *5.

24

Restatement analysis. The entire purpose of the Restatement analysis is to prevent parties from contracting around the law of the default state by importing the law of a more contractarian state, unless that second state also has a compelling interest in enforcement.[124]

The court astutely noted that allowing "freedom of contract" principles to eclipse a "default"—satisfying the "materially greater interest" standard—state and its statute, which voided the contractual provision on public policy grounds, would result in a court's analysis defaulting to the parties' contractual choice.[125] In other words, the nefarious nature of the contract would become irrelevant to the Restatement analysis.[126]

The Chancery Court's holding in *Ascension* is prudent, however, if the arbitrator had relied on its analysis, *Ascension* is still based on clear factual differences that prevent such reliance. First, AEL is incorporated in Delaware, which creates a "substantial relationship" between one contracting party and the State of Delaware, and AEL does not have a principal place of business in Pennsylvania.[127] Second, the negotiation, performance, and execution of the loan agreement occurred in Delaware. These factual circumstances alter the balancing: Delaware's "materially greater interest" and public policy of a contracting haven versus Pennsylvania's "fundamental policy" against usury contracts. The balancing shifts because the fulcrum of the Chancery Court's balancing analysis in *Ascension* depended on the "default" state also harboring a fundamental policy of voiding the contract—a situation that is not present here.

---

[124] *See id.*

[125] *See id.* ("In other words, in *every instance* where the parties seek to circumvent application of the law of the default state, the state whose law *was* chosen and is asked to enforce the contract will have the interest of protecting freedom to contract. It would be a tautology. . . .").

[126] *See id.*

[127] *Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at *3 (D. Del. Apr. 14, 2016).

Similarly, in *Sensus USA, Inc. v. Franklin* [hereinafter *Sensus*], the United States District Court for the District of Delaware found that the balancing equation implicated here would shift in Delaware's favor.[128] The Court held that because Georgia's only connection to the dispute was that the defendant lived there; worked from his home in Georgia; and signed the contract in Georgia, Georgia did not have a "materially greater interest" than Delaware under *Restatement (Second) of Conflict of Laws* § 187(2)(b).[129] Therefore, the Court found that Georgia's public policy against "restraints on employment" was not sufficient to satisfy the exception under section 187(2)(b) and override the contract's Delaware choice of law provision.[130] The same could be said of Pennsylvania's connections in the present case; in fact, Pennsylvania has less connections than Georgia had in *Sensus*.

In the case *sub judice*, I find that the arbitration awards as to Respondents Medora and Griffin are in "direct contradiction to the express terms of the agreement[s] of the parties."[131] First, the arbitrator's choice-of-law analysis—to the extent he performed one—is clearly erroneous.[132] Granted, grave legal error is insufficient to vacate an arbitration award. However, the reviewing court is not expected to "rubber stamp" the arbitrator's decision.[133]

---

[128] *See id.* at *4.

[129] *See id.*

[130] *See id.* at *2, 4.

[131] *Malekzadeh v. Wyshock*, 611 A.2d 18, 22 (Del. Ch. 1992) ("If the Arbitrator decides an issue outside of those contained in the submission, or if his actions are in direct contradiction to the express terms of the agreement of the parties, he has exceeded his authority.")

[132] Because the arbitrator is not required to express his reasoning on a particular matter, the Court cannot presume that he performed such an analysis when he does not expressly outline his reasoning in the awards. *See id.* at 22 ("An Arbitrator need not state the grounds for a grant of relief, and it is normally inappropriate for a court to direct an Arbitrator to disclose the reasoning of his decision.").

[133] *See Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 579 (3d Cir. 2005) ("However, we cautioned that '[e]ffusively deferential language notwithstanding, the courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators.' ") (internal quotation marks omitted) (quoting *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir.1996)).

And, while errors of fact or law are insufficient to overturn an arbitration award, this case involves something "more."[134] Namely, the arbitrator's reliance on inapplicable case law despite the extensive briefing by the parties regarding the appropriate analysis for a choice-of-law question, and the arbitrator's statements in his current and prior arbitration awards regarding Delaware versus Pennsylvania choice-of-law issues. These contextual parameters evidence that the arbitrator was "cognizant" of controlling law and willfully disregard the law.[135]

In this regard, I find *Kaneff*, *Gregoria*, *Salvatico* and *Jaibur* inapplicable to Respondents Medora and Griffin's arbitration awards. *Kaneff* engaged in a *procedural* choice-of-law analysis for an unconscionability claim and *Gregoria* cited *Kaneff* in its choice-of-law analysis.[136] Further, in *Gregoria*, the United States District Court of the Eastern District of Pennsylvania dismissed the Fair Debt Collection Practice Act claim and required the plaintiff to file an amended

---

[134] *Blank Rome*, 2003 WL 21801179, at *7 ("Factual or legal errors, *without more*, are not sufficient bases to vacate an arbitration award." (emphasis added)).

[135] *E.I. DuPont de Nemours & Co. v. Custom Blending*, 1998 WL 842289, at *5 (Del. Ch. Nov. 24, 1998) (internal quotation marks omitted) (quoting *Weir v. Manerchia*, Del. Ch., C.A. No. 14836, Allen, C., mem. op. at 9 (Jan. 28, 1997)). The Court disagrees with Respondents' belief that 10 *Del. C.* § 5701 prevents the present inquiry. Respondents' Response at 14-15. Section 5701 prevents a reviewing Court from addressing the "merits" of the dispute, which, in this case, concern the claims asserted against Petitioners. *See* 10 *Del. C.* § 5701 ("In determining any matter arising under this chapter, the Court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute."). Addressing Petitioners' challenge to the arbitration award regarding whether the arbitrator exceeded his authority in his choice-of-law analysis does not concern the substance of the case. *See Metromedia Energy, Inc.*, 409 F.3d at 578 ("Here, MME's challenge to the arbitration award focuses not upon the underlying merits of the panel's analysis, but rather upon whether the panel exceeded its authority. . . .").

[136] *See Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 624 (3d Cir. 2009) ("Under all of the circumstances set forth above, Pennsylvania has a materially greater interest than Delaware in the determination of whether the arbitration clause is unconscionable."); *Gregoria v. Total Asset Recovery, Inc.*, 2015 WL 115501, at *3-4 (E.D. Pa. Jan. 8, 2015).

complaint to join a necessary party.[137] Neither case is applicable to Respondent Medora or Respondent Griffin.[138] Whereas Respondent Baird asserted an unconscionability claim during the arbitration proceedings and the arbitrator ruled on that claim, Respondents Medora and Griffin withdrew their unconscionability claims.[139] Furthermore, Respondents' reliance on *Salvatico* and *Jaibur* is misplaced, as these cases were judicial orders which did not involve adequate analysis.[140] The fact that the parties provided extensive briefing to the judicial officers in those matters is unhelpful to this Court's present determination.[141] The parties' briefing does not provide insight into the judicial officers' minds. Thus, the reliance on a one-page order provides little authority to support a position.

I vitally reiterate the high deference an arbitrator's decision is awarded; the Court does not come to its decision lightly. Yet, in the Court's view, an equitable choice-of-law inquiry would lead to the application of Delaware law. Indeed, the arbitrator expressed this sentiment in his February 14, 2011 arbitration award where he noted that applying *Kaneff* in a similar situation would result in rewriting Delaware law.[142] In applying Delaware law to the contract, he also acknowledged that his prior application of Pennsylvania law was incorrect, noting that

---

[137] *Gregoria*, 2015 WL 115501, at *7.

[138] The cases' factual backgrounds are insufficient to fill the analytic gap.

[139] Respondents' Response, Exhibit A, at 1 (arbitration demand). In Baird's arbitration award, the arbitrator specifically states "[w]ith regard to the Count I Unconscionability Claim I find against Claimant [Baird] and for Respondents. . . ." Petition to Vacate Arbitration Award for Respondent Baird, Exhibit 3, ¶ 3. And, as noted above, in both Medora's award and Griffin's award, the arbitrator notes in the beginning of the award that Count I (Unconscionability) was withdrawn. Petition to Vacate Arbitration Award for Respondent Griffin, Exhibit 3, ¶ 1; Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 3, ¶ 1.

[140] Respondents' Response, Exhibit G, at 1, Exhibit H, at 1.

[141] *Id.*, Exhibits G & H.

[142] Petitioners' Opening Brief, Exhibit 12, at 2.

his "thinking and reasoning ha[d] evolved."[143] Thus, the arbitrator's deviation from these sentiments evidence more than simply an "erroneous interpretation of the law," which is beyond this Court's review, but a conscious decision to disregard the law.[144] Such circumstances appear to be the exact reason a reviewing court should vacate an arbitration award. That is, arbitrators' decisions are not "untouchable."[145]

---

[143] *Id.* The arbitrator's statement in the arbitration awards that his thinking has flip-flopped because *Gregoria, Jaibur* and *Salvatico* have since been rendered and provide guidance on *Kaneff*'s analysis does not present a defense to this prior knowledge. Petition to Vacate Arbitration Award for Respondent Medora, Exhibit 3, ¶ 18; Petition to Vacate Arbitration Award for Respondent Griffin, Exhibit 3, ¶ 34; Petition to Vacate Arbitration Award for Respondent Baird, Exhibit 3, ¶ 23. As noted above, *Gregoria* does not interpret *Kaneff*, and *Jaibur* and *Salvatico* are orders that lack analyses. Thus, the statement simply further acknowledges his awareness of the relevant law.

[144] *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir.1985)). It strikes the Court as problematic not to consider a prior arbitration decision since failing to do so would allow an arbitrator to oscillate back and forth *ad infinitum*, never providing any solid guidance to future parties.

[145] *Carl Zeiss Vision, Inc. v. Refac Holdings, Inc.*, 2017 WL 3635568, at *4 (Del. Ch. Aug. 24, 2017).

## VI.  CONCLUSION

For the foregoing reasons, Petitioners' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART and Respondents' Cross-Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  Accordingly, the arbitration awards of Respondent Medora and Respondent Griffin are vacated.

Regarding Respondent Baird's arbitration award, the Arbitration Award is **AFFIRMED**.[146]  Judgment is entered according to the arbitration award:

a)  $7,269.00 to Respondent Baird for PLIPL statutory damages;

b)  $500.00 to Respondent Baird for UCC statutory damages;

c)  $1,588.00 to Respondent Baird for TILA statutory damages;

d)  $6,600.00 to Respondent Baird for attorney fees; and

e)  $200.00 to Respondent Baird for reimbursement of arbitration administration fees.

Additionally, $604.00 will be deducted from Respondent's judgment as the arbitration award found that he owed Petitioners for loan principal and lawful interest.  Therefore, judgment is entered in Respondent Baird's favor in the amount of **$15,553.00**.

Further, Respondent Baird's counsel has requested a revised award for attorney's fees based on counsel's defense of their position in this Court.[147]  Accordingly, Ms. Houghton shall

---

[146] *See* 10 *Del. C.* § 5714(d) ("If the application to vacate is denied and *no motion to modify or correct the award is pending*, the Court shall confirm the award." (emphasis added)); *see also* 10 *Del. C.* § 5713 ("The Court shall confirm an award upon complaint or application of a party in an existing case made within 1 year after its delivery to the party, *unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award*, in which case the Court shall proceed as provided in §§ 5714 and 5715 of this title." (emphasis added)).

[147] Respondents' Response at 30.

file her petition within fifteen (15) days and Petitioners shall have fifteen (15) days to respond.

The Court shall consider that issue in a separate opinion.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

cc:    Ms. Tamu White, Chief Civil Clerk